Good morning. How are you? Great. You may proceed. You must be... Yes. My name is Neil Pedersen, and I'm here on behalf of the appellants, Euroconcepts, and the other individual appellants. Okay. Thank you. Parties agree on the broad issue to be decided here, and we agree on much that's in the record. I think we disagree in two or three fundamental areas. First of all, the appellant believes that the insurer and the court below has too narrowly defined the term advertisement in its policy in interpreting whether or not there was a duty to defend to be extended to my client. So assuming that's the case, was the underlying lawsuit about advertising? Yes, it was, Your Honor. Okay. Why don't you point to me where in the complaint in that case? The complaint, as the insurer has pointed out, does not use the word advertisement or advertising. Right. They have pointed that out, so you're not going to point it out to me where they talk about advertising anyway. Yes, Your Honor. Keeping in mind that the... Paragraph? Oh, yes. I can point you... Where in the excerpt of the record is the complaint? And tell me which paragraph... Yes, Your Honor. You're talking about the... what page in the excerpt of the record? The paragraph is... Excuse me for not having it immediately available. Okay, well, you want to narrate for a while and while you're trying to find it? I don't have the paragraph number in my notes, but I will find it here in the record, but the paragraph... Do you have the excerpts? The paragraph says... Do you have the excerpts? Have the excerpts. I can quote for you the portion that I would refer to. Did you get my question? It's capable of a yes or no answer. Do you have the excerpts of the record with you? I do not. No. You came to court without the excerpts of the record. That's interesting. Okay. Specifically, the complaint alleges that the copycat house is used by the defendants in promoting and selling their goods and services. And I can locate that if you would like me to take the time to find that particular paragraph, but I don't have that paragraph number. It then goes on in the prayer to talk about... I'll take the time. Oh, okay. Very good. Thank you. What are you looking in? I'm actually looking to my brief where we've cited to the record where it says that. And that I would find it in the complaint that I have alongside me here. You have the complaint loose. I have the complaint alongside me. Where is the complaint in the excerpts of the record? It's in tab 11. Okay. I have tab 11. Specifically, it starts at page 259 in tab 11. Okay. Thank you. It says copyright infringement, trademarks and trade dress, delusion, false designation of origin, unfair competition under United States law, and civil conspiracy. Yes, Your Honor. Nothing about advertising. Your Honor, this points out the fundamental problem that we had at the trial court below, which is that the insurer, in this case, has created this fortress of the words used by the plaintiff in the complaint and has suggested that if it isn't actually stated in the complaint the words advertising or if there isn't a cause of action that says infringement of copyright in advertising, that then there is no duty to defend. But that's not the law. The law is that you look at the specific allegations of the complaint and the information, the extrinsic evidence learned outside of that complaint, to determine if those facts that the insurer has learned give rise to the potential that there would be liability in this case for covered offenses under the advertising injury policy. And that's exactly what happened in this case. In fact ---- That's a lot of abstraction. What is the concrete thing you're relying on? I'm sorry? That's a lot of abstraction. What are the concrete facts you're relying on? What's in the complaint and what's in the outside facts? Yes, Your Honor. I'm relying upon the fact that they did the ---- I'm relying upon the fact that they did the ---- I hope you're not charging your client for preparing for this little argument. Your Honor, I am very prepared to talk about the issues in the case. I'm sorry I cannot find the specific paragraph. You obviously haven't read your brief recently. Can you find the place in your brief for you? I would think about giving a discount to the client anyway for the preparation.  The complaint alleges that my clients used the copycat house to promote its own sales and products. When you look at the Elkhom case, the Elkhom case didn't say advertising in it either, and yet alleging the marketing of the product was enough for that court to find that advertising was involved. But we can look at this and know that, in fact, this complaint gave rise to this very potential. When you look at the actual pretrial order that was generated in this case, where the scope of the issues that were going to be taken to the jury were set out in specific detail, that pretrial order had no ---- in the advertising engaged in by Euro Concepts because they had that flyer that they were handing out. It's not the focus of the case. The focus of the case, right, wasn't it that Euro Concepts had stolen plans and built this copycat house, which it had then used to show off its products, and one aspect of that effort was a single flyer? That is correct, Your Honor. But in a coverage analysis, when you're deciding whether or not there's a duty to defend, we don't look at the overall focus of the case. If there are allegations in the complaint that give rise to potential liability on a covered area, the insurance company has an obligation to defend the entire lawsuit, subject perhaps to reimbursement under Buss v. Superior Court and things like that. So then if the complaint raised the possibility of advertising injury, then the extrinsic evidence suggests a single flyer distributed at the Pacific Design Center. And the question is whether that then rises to the level of advertising in the insurance policy, which says widespread public dissemination of information using radio, television, billboard magazines as a model. Well, I would agree and disagree with you, and this is where I agree and disagree. The narrow issue of this case is does that flyer constitute widespread public dissemination or widespread public distribution? Right. There is another issue that I will speak about in a moment, but that's the primary focus of the first issue. And as to that, the only reason I'm saying I disagree with you is that you used the word dissemination, and I believe that the provision that we're relying upon is C, which says widespread public distribution. And I don't mean to be too picky there, but I think the word distribution means something very different than the word dissemination. But what about the word widespread, which then is followed by a description of radio, television, billboard magazine, newspaper, the Internet? Yes. Why doesn't that then frame the scope of distribution as well? Yes, because radio, television, newspaper, and the like is in definition A of a three-part definition. Definition C says widespread public distribution, and distribution has a meaning, a plain meaning, that is inconsistent with how you advertise through television, radio, newspaper. What does widespread mean? Widespread, according to Romby, according to Hamid, can be to particular market segments. And what this insurer was made aware of at the time it was making its coverage decision is that through this flyer, Euroconcepts was distributing the flyer to a major portion of its market segment, in addition to members of the public that walk into their public showroom. The insurer could have put in a proviso in the insurance policy that was distribution to particular market segments, essentially a subgroup of the public, would have been adequate. Instead, the language is widespread public. Yes, Your Honor. Not subgroup, but widespread public. When they inserted the word distribution into that definition C of the agreement, they changed the focus of all of the other definitions, where dissemination above is a widespread, it's like the spreading of seeds. Distribution is the kneading out or handing out of things. When you look at what they... No, no. Dissemination precedes A, B, and C. So it says widespread public dissemination through, and C is, so this is A form of dissemination, widespread public dissemination. C, any other publication, gives widespread public distribution. Which is... So it doesn't, the use of the word distribution there doesn't take it out of dissemination or widespread public dissemination. It's just one instance. There I would respectfully disagree with you because the two terms are inconsistent. You cannot disseminate and distribute when you look at the plain meaning of those words. Dissemination is a much broader concept. Distribution is a much narrower concept. That's what the context says. I'm sorry? Do you have the context for anything? I do, Your Honor, and it does say that. And that's my point, is that when you have inconsistent terms within the same definition of the word advertising, we then must go to a Bank of the West analysis that says that where there is an unclarity because of words that are inconsistent, you must go through the process of determining what the insurer believed the insured understood at the time. And what we've provided in the briefs are, for instance, the jargon translator that says, this is the plain English meaning of the terms we use, and it says flyers and promotional and brochures. Can you explain why you think those two terms are inconsistent? Why can't they be read in harmony, which is what we need to do? You know, if two terms are truly at loggerheads, I guess we can't do anything about it. But why can't this be read to say widespread public dissemination by widespread public distribution? So instead of reading them as inconsistent, just read them as synonyms. There's no question that the Court should try to read the provision consistently, but that's not possible here. The plain English meaning of the word disseminate is to scatter widely or to scatter or spread widely, while the definition of the word distribution is the giving out or division among a number, sharing, parceling out, allotting, dispensing, apportioning. They are different in concept. I think you just said the same thing twice. Well, I — It's not like one says cow and the other says dog, or it doesn't say like one says yes and the other says no. Two words that are very close, largely interchangeable in the English language. Maybe if you put the dictionary definitions next to each other, you might find some inconsistency, but I doubt that you'd find antagonism or — I mean, I just don't see it. Isn't there, in fact, a much — a way of harmonizing this that says widespread dissemination through the kinds of vehicles that we understand would be widespread, radio, et cetera, and the Internet, and then C is a residual category dealing with other publications, but only those publications that meet the scope of the others. In other words, only those publications that, given widespread public distribution, not any old publication, i.e. a flyer, but only those that meet the breadth of categories consistent with the others. Why isn't that a way of harmonizing all of this? Because — and I was talking about that jargon translator, which is something Hartford puts on the Internet. It says, look here to find plain English of what these terms mean, and clearly in that jargon translator it says that flyers and brochures are part of the advertising injury coverage. You don't distribute — But only so long as there are wide — that it's subject to widespread publication. Yes, and that's when we then go to the idea of what is widespread, and market segments are sufficient to be widespread. It doesn't have to be all the public. It can be to the particular market to which they are — they wish to sell their goods. And so widespread is — Excuse me, Councilman. Let me ask you a question about that. You notified Hartford that certain suppliers took photographs of the products inside the Maryland Park House and used those photos in their magazines. I can't understand why that fact is relevant. Those pictures in your suppliers, those pictures are the supplier's advertisements. The insurance policy covers only your own advertisements. That's the second issue I was going to talk about, and I'm glad you asked it, Your Honor, because when you look at the policy, it says your advertisements. But when you look at the definition of advertisements, it doesn't say that my client has to pay for them, has to produce them. It says that an advertisement is when my client disseminates information or images that then are an offense under the policy. My client could take infringing pictures, have infringing copies, say infringing statements to a third party that gets published in a newspaper article or in these other journals like Architectural Digest, and that would be sufficient to be considered your advertisement because it's where my client has disseminated that information or those images that caused it to be published in those publications, regardless of whether they paid for it or published the color ad or whatever it might be. I guess as I look at it, it looks more like a solicitation than an advertisement. What am I missing here? Well, a solicitation, as I would commonly understand that, would be, for instance, in the cases where we had Rambi and Hamid, where they made phone calls and brought people into a breakfast meeting or one-on-one phone calls. The flyer, if we're talking now about what goes into Architectural Digest and things like that, that's actually a way of marketing the product. They're not soliciting a one-on-one. They're actually putting information and images out into widespread public dissemination through Architectural Digest and the other magazines by providing this infringing information to the reporters and to these publications. All right. I see your argument. Thank you. Okay. Your time is up. Thank you. Mr. Marmolevsky. Good morning, Your Honor. It's Dan Marmolevsky on behalf of the Hartford. I would agree with the Court's questions that the focus here has to be on the specific words in the insurance policy. There are a lot of insurance policies out there that cover advertising injury and they all have their own peculiar language. The focus here is a claim was made based on receipt of a lawsuit by William Hoblinski Architects for advertising injury based on copyright infringement in your advertisement. So what the insured has to show is that the insured was sued for copyright infringement, which is what happened here, that the copyright infringement was not in an advertisement but in your advertisement, and that the vehicle of that advertising, the flyer in this case, qualified as an advertisement as that term is defined in the insurance policy. The analysis, frankly, ends as soon as you look at the flyer because that flyer does not infringe the copyright that was the subject of the litigation. The subject of the litigation was architectural work and technical drawings. A drawing of a building that has been constructed with a blueprint as a matter of law does not infringe a copyright in that blueprint. Statutory basis is 17 U.S.C. Section 1720, which makes clear that in fact a drawing of a building built with copyrighted blueprints does not infringe that copyright. And more specifically, if you step back, copyright infringement in your advertisement, look at the litigation. The litigation, the allegations in the complaint, as Judge Kaczynski specifically directed, it's not about infringement in a drawing. It's about, if you look at excerpts of record, page 282, willfully infringing WHA's copyrights by knowingly reproducing, displaying, distributing, and utilizing for purposes of trade unauthorized versions of the architectural designs and technical drawings. That's what the lawsuit was about. The lawsuit was about stealing somebody's blueprint. It wasn't about having a flyer that was available in a showroom at the corner of San Vicente and Melrose Avenue in West Hollywood. So, just so I understand your argument, if the flyer had actually shown the blueprint  you would think that would cure that problem? If the flyer reproduced the entire blueprints, for example, yes, I would believe that that would be enough to move forward to the next step of whether or not the flyer constituted an advertisement. Would it have to copy the whole blueprint? The blueprint is, let's say they just said, here it shows how creative we are in the use of bathrooms, and they show the blueprint of a bathroom, and this happened to be just like, very close to what is aligned to be infringed work. That would be a copyright infringement, wouldn't it? I think not, but I'll preface that by saying I'm not a copyright lawyer, but under the statute the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the architectural work does not infringe that copyright. So, I believe as a matter of law the analogy that you've just given probably would not infringe, but again that's not the facts that were presented here. I don't understand why is that? Which one of those is it? If you are displaying a picture of the copyrighted work, and if the copyrighted work here is the blueprints, I don't think just a picture of a portion of it would necessarily infringe the copyright. But again, I'm not a copyright lawyer. That was not an issue that was presented. I don't even understand your argument. You said a picture of the whole blueprint is, then you read me something that has nothing to do with portions or parcels, and you say that shows, it makes no sense at all. I apologize. You just managed to sort of fall off the edge of reason. Okay, I hear you. If the difference is between full and partial, nothing you've said according to the statute speaks to that distinction. I was trying to understand your argument. I said, what if they copied the blueprint? You said, well, it has to be the full blueprint. I said, okay. Why not a partial blueprint? And you quote me the section of the statute had nothing to do with parts. What do you rely on? Okay. Again, Your Honor, if you are displaying what is copyrighted, it is not necessarily a violation. Again, I'm not a copyright lawyer. You're saying not displaying the copy, the plans themselves. Right. But the product of the plans. Right. Judge Kuczynski's question was, what if the flyer had the plans themselves? That would be different, but that's not this case. It's not this case. And, again, I was trying, I think it would be. Of course, that's how it works. We ask questions about things that are not this case to eliminate this case. It's called a hypothetical. You've heard of those. I have, Your Honor. Okay. Back to my question. I'm not a copyright lawyer. This issue wasn't presented, and so I don't know if it was a portion, whether it would be a violation. My belief is it would not be. But, again, I don't have that answer for certain. But if it were the entire plan, it would be. If they reproduced the entire copyrighted plan, that would satisfy the prong to show copyright infringement in the flyer depicting the entire plan. And what they showed instead was what exactly? There's a drawing of a house. So this is not like a picture of a house made with that. It is a drawing of what a house would look like that was built with those plans. It is a drawing of what the house did look like that was built with those plans. In other words, they stole the, the allegation, the complaint, was that they stole the plans and built an identical house and then used that house to show off their products. That was not the allegation in the underlying complaint. The claim made by Bureau Concepts for insurance coverage was that this drawing that was made available to visitors to a showroom met the definition in the Hartford insurance policy. They never alleged that that drawing infringed the copyright. And, of course, the underlying lawsuit never alleged, neither in the complaint nor in the pretrial conference order, that that drawing infringed any copyright. Perhaps at the beginning of the Hablinski case, Hablinski had not seen the drawing, but he certainly had seen the drawing by the time of the pretrial conference order and by the time of the trial, and they never alleged in their lawsuit that a copyright was infringed by that drawing. And what about the pictures of the, the pictures in the Architectural Digest, which is the photographs of the house that was built from plans that had been stolen with products that Euro Concepts sold? That does not fit within the policy for a couple of reasons. First of all, again, the photo of the house does not infringe the copyright in architectural work or technical drawings. And secondly, the policy provides coverage for copyright infringement in your advertisement, not in an advertisement. And there's no concept of aiding and abetting another to infringe? In other words, what Euro Concepts was doing was providing, essentially, access to this house so that others could advertise in it. It's almost like aiding and abetting the others advertising. There's nothing like that in the policy. Again, the advertising was not alleged to infringe a copyright. I see. And the offenses for which there were coverage under the Hartford policy was limited to copyright infringement. The Hartford policy, for example, specifically excluded coverage for trademark infringement, trade dress, false designation of origin, some of which were claims in the Hublinski lawsuit. But coverage, understandably, was not sought with respect to those claims because there was a specific exclusion in the Hartford policy that appears at ER-198 for personal and advertising injury arising out of any violation of any intellectual property rights, such as trademark, trade name, trade secret mark, or other designation of origin or authenticity. The only coverage, again, was for copyright infringement. Now, where in your brief do you make the argument that this is not covered by that depiction of the house was not an infringement of the blueprint? The brief does not have the statutory cite. We do make the argument that there is... We don't make the argument at all. We do make the argument that there is no causal connection between the trademark infringement, the copyright infringement that was alleged. Yeah, but that's quite different from saying there is no infringement, which is what you led off as in your argument. That's a wholly new argument, right? It's not a wholly new. It's an expanded argument. I did not cite the statute in the brief. Won't you show me the part in your brief that comes closest to dealing with this? Sure. If you look at... You, of course, understand that if you don't raise any brief, opposing counsel doesn't have a chance to address and have a reply, and he just used up his entire time arguing. So he has no notice whatsoever that you are going to make this argument. We haven't had a chance to look at the statute that you've greasily quoted to us. At least I didn't. No, I... I haven't had a chance to look at the cases. I mean, what you're saying sounds plausible, but I could not be surprised to see any cases going the other way. So where in your brief is this? The argument about the lack of a connection between the copyright. No, no. You tell me what in your brief is the closest to the argument that you led off as a dual argument, the argument that this can't be an infringement because it's a picture of a house and not a picture of the drawings. Where in your brief is the closest? Where is it? That we don't discuss. We discuss the need for a causal connection. So you led off in your oral argument with an argument that's never been discussed in your brief. Yes or no? The answer is no, Your Honor. I led off by saying, number one, they had to show... I heard what you said. Well, my second point is they had to show a causal connection. The whole discussion about this, about the question of whether or not if this, you made this argument about it's a house, not a drawing, and I said, well, what if it was a blueprint and so on, that was your lead off argument. You know, we have tapes of these things, so you can listen to what you said. This has never been mentioned before. Was it mentioned in the district court? In the district court, the mention was made specifically that there was no copyright infringement in the advertisement. There was not a citation to the statute that I quoted. Can we rely on this argument? If you haven't made it here or you haven't made it below, isn't this argument waived? No, it's not, Your Honor. And why is that? Number one, the argument, the basic argument is that there's no causal connection. That was made there below. No causal connection between... The copyright infringement alleged in the complaint and the... But that's quite different from saying there's no infringement. Your argument was there's no infringement in the flyer because the flyer doesn't contain a blueprint, it contains a house. That's what your lead off is. It says, end of the matter. You quoted the statute. You said you quoted the statute. I look in your brief. I don't see that portion of the copyright act cited. I thought maybe I missed it. You know, it's possible. Sometimes we miss things. But I'm completely... I mean, it's not there. It is not there, Your Honor. It's, again, I view it as the second prong of their burden, and that's to show the causal connection between... Well, you may view it many ways, but the point is you have to argue it. There are lots of things that lawyers view, they don't argue, and then the argument's gone because, you know, you haven't made it the right time. You ever heard of the contemporaneous objection rule? I have, Your Honor. Okay, you know how it works. You see, and the fact that afterwards in bed at night you say, damn, I should have said hearsay, does you no good at all. At that point, it's gone. Now, why isn't this argument gone from this argument that you made that you let off with? Why isn't that argument, which sounded pretty good as you said it, but, of course, I haven't looked at the cases. Again, I believe it's encompassed within the causal connection, Your Honor, and fellow members of the panel may disagree. That's how I believe it's preserved. It's preserved in the letters that are in the record. Again, without citation to Title 17, but the point has been made repeatedly that the copyright that was alleged to have been infringed... Both lawyers should give a discount to their clients for their work here. With my brief remaining time, if I could focus on the third prong of what they had to show in that is that this was an advertisement as that term is defined. The difference between this policy and other policies is it has the words widespread public dissemination. It does not have the words specific market segments. In fact, and this is not in the excerpts, but it is... I don't get it. That's part of the argument I didn't get at all. I mean, why isn't an advertiser in the store just as good as any other advertiser? You ever go to supermarket and you see they've got, you know, selling beef on sale? Or you go to Costco and they say, get our credit card or, you know, get your mortgage here. Why isn't that, you know, thousands of people go to the store and see it? Why isn't that advertising? What's so swell about having people stand on the street corner and hand out leaflets when you have the people who are likely to be most interested in your product walk right in? Why isn't that advertising just like any other advertising? Because advertisement is defined. This is a contract, and advertisement is defined here as widespread public dissemination. In contrast with other policies, including the other policy... Okay, which part does it fall under? Where does this not satisfy? Is it widespread public or dissemination? Which of those three words you think doesn't apply to a leaflet in a store? Well, it has to satisfy all three. Which one do you think it fails to? You only need to fail one in order to... So you give me your best shot. Which of those three words do you think doesn't apply? I don't think it satisfies any, but I would start with widespread and the definition of widespread and words that are not defined in insurance policy. Well, let's say you're McDonald's, and in every single one of your stores, you have a big thing saying, buy the Big Mac. And it turns out there are 6 billion people a year going to McDonald's. More people than there are on Earth walk into McDonald's and see that advertisement. Why is that? Well, because some go twice. Some go weekly. So let's say 6 billion, 12 billion eyes see that flyer that says, buy the Big Mac, now with Wisconsin cheese. Some special thing they've done to the Big Mac that makes it better even than you remember as a kid. So why isn't that advertising? It's there. People walk in and say, I'm going to have a McChicken. No, I'm going to go for the Big Mac because it's got the new... Why isn't that widespread? If this flyer had been in 6 billion showrooms, I think it would satisfy widespread. I see. So you would treat differently somebody that has more than one showroom. I don't understand. What if it was a really big showroom, like a big Costco, where every day 15,000 people walk in, 15,000 sets of eyes see the advertising. Is that widespread? I mean, that's more than most advertising campaigns. You multiply that times 7 days a week, times 52 weeks a year, you are now looking at something like the population of Bosnia. Why isn't that enough? Looking at the ordinary meaning of widespread, widely circulated or diffused, generally prevalent. If something is available only in one showroom located in one building in West Hollywood, that does not meet the definition of widely circulated. Even if that's where the buyers are, let's say you do the advertising, let's say there's a convention of one of these things that they have where they show new products. And you send in your team, and you have a little booth, and you've got a sign there advertising your newest thing or flyer. And all these people walk by. But, you know, this is not a lot of people as compared to the population of the world. But when it comes to the people who are interested, who are likely to buy your product, this turns out to be 5, 10, 15 percent of those people. That would not be covered, that definition, Your Honor. I'm sorry? That would not satisfy the definition of widespread in public. Why is that? Well, public has to be available to the population or community as a whole. Unwashed masses? Pardon? To the unwashed masses? Generally speaking, yes. Well, but you're not selling to the unwashed masses. You're selling to a herpeloid. Right, but then you can buy a policy that says public or specific market segments. And the original complaint in this action, which was removed by the Hartford, was a complaint against the Hartford and Northern Illinois. And in contrast to the Hartford, the definition of advertisement in the Northern Illinois policy, where they did provide a defense because it was covered within their policy, said advertisement means a notice that is broadcast or published to the general public or specific market segments. And the absence of that language here suggests that the default position is public means public widespread, not just a... Public means open to all persons without limitation. Well, but this is open to all persons without limitation because this is not like a membership store or a private club where they don't discriminate on the basis of race or income. You can walk in. I think, as I read in the record, you cannot walk into this store. You have to have a special pass to get into this showroom. Is that correct? Well, there's a disagreement below and here as to the Pacific Design Center, whether or not you can go into the showroom. You can go into the first... This is the tiny bowl in the sky? Pardon? The blue one? Yes, the blue whale, yes. Oh, I go in there all the time. I don't have a retail license. It's not so hard. But, of course, that's... As far as it's a disputed fact, you can... We have to assume it against you. They bore the burden to show that there was coverage and they didn't present anything other than to say that... You said there's a disputed fact in that. There is a dispute in the briefing below and here. Judge Snyder quoted from what the Hartford said, but again said you don't have to get there because this showroom, which has the flyer available to people, does not satisfy the definition of widespread or public. So where does that leave you on that issue? I'm sorry, on the issue of... What do you assume about the access? I don't believe that just anybody can go into any showroom. No, no, but it's not your personal belief that matters. My personal belief, the question is where does the record leave us on that? There was no evidence submitted to show what the level of access was to a showroom at the Pacific Design Center. So we can't assume it was restricted, right? We can't assume that... Can we assume that it was open to everybody? There's no evidence one way or the other and the burden was on the plaintiff, Euroconcepts, to show that it satisfied the requirements of the policy. Euroconcepts did not do that. What Judge Snyder said is any way you look at it, a showroom in one building in West Hollywood does not qualify as widespread and public. Even if that was a showroom that was open to the public, it was simply the fact that it was only one showroom in West Hollywood. Right, because it was available to a limited or restricted audience... You can't say restricted because your record doesn't support that, but limited by where and when. It's restricted in that the only way you could see it was to be in this showroom. You couldn't see it on a billboard or turn on your radio or open your newspaper, which in Section A of the definition of advertisement gives examples of methods of marketing to the public at large without limitation. I just don't quite understand why Judge Snyder is right about that. Why isn't advertising that is located... I mean, what advertisers try to do is they don't want to waste money, or people who do advertising, they don't want to waste money by advertising to people who are not likely to buy. They try to segment. The Internet does this very well because they sort of figure your clicks and they figure out who you are, and then they put advertising that fits your web-surfing pattern. Right, but then your concepts... Would you say that Google advertisings are not advertising because they only get shown to people depending on what their browsing practices are? You don't get the same ads I do. Probably not. Probably. I mean, I don't know what your ads are, but as I understand it, the way Internet advertising is done is they figure out what web pages you browse and then feed you advertising that's consistent with your browsing practices. So, you know, if you do a lot of shopping for auto parts, they might figure that you're a person interested in that kind of thing and give you that kind of advertising. Is that why that would be not advertising? Because it's only directed at that limited audience of clicks? I mean, you're not going to say that, are you? Well, the Internet is one of the examples. It's example B under the definition of advertisement and certain Internet advertising, if it's available. Yeah, but you would say, oh, well, that only goes to a market segment because not everybody who goes on the Internet sees it. And you'd have to be arguing in the next case, well, you know, this is not widespread. So Internet advertising that's widespread, you know, if everybody sees it, it's okay, but if it's sort of segmented by, you know, I can see you here in the next case arguing that that is not advertising because it's not distributed to the entire public. How is this different? Well, Internet advertising is something that's generally open to the public at large and has the potential for unlimited viewership. No, it's not. I can go online all day long and I will not get any advertising for other parts or other racing or any of that stuff because they know I'm not interested in that stuff. They know. Google knows. You know, I'd have to use somebody else's computer. Maybe just Google. Yes, it's fine. Anytime. So is that limited? How is this different? They advertise to the people who are going to be interested. They advertise in their store. If they wanted a policy that ensured copyright infringement in an advertisement that was made available to a specific market segment, they should have bought that policy. That's not the policy they bought. Or actually, they bought that policy from Zurich's affiliate in northern Illinois. They didn't buy that policy from the Hartford. The Hartford doesn't cover specific market segments. So the judge below, essentially his decision was framed by the physical parameters of where this was distributed. Walk-in customers to the showroom. And that's what made it more like one-to-one solicitations and other decisions than public in the way you're describing it. Exactly. It wasn't widespread or public. Thank you. Thank you, Your Honor. You're out of time, but I'd like to take a minute for rebuttal. Thank you for that courtesy, Your Honor. I want to quickly address three things. First of all, there is no evidence that the showroom is private. That only first came up in the appellee brief. And, in fact, it's a public mall. This could be akin to any store you would find in a public mall where people walk in off the street. The sites to the record in terms of where in the complaint there are allegations that gave rise to a potential for coverage, there are perhaps a dozen. I will give you three right now because of the time constraints. I would say paragraph 71, paragraph 93, paragraph 99. What you're going to find in each of those is a reference to the idea that the defendants used the appearance and image of works created by Hablinski, such as the Sands residence, in connection with various actions that they did to market their own products. But where we can see the true potential here is because we have the advantage of 20-20 hindsight. That pretrial order clearly says that there were allegations of copyright and that the allegations of infringement go directly to the flyer that was discussed. And so the pretrial order is filled with that. That is what went to trial against my clients, and they should have had a defense for that. I appreciate your time. Thank you very much. Thank you. Case resolved. You will stand submitted. Last case on the calendar is National Association of Chain Bag Stores v. Schwarzenegger.
judges: Gertner, Kozinski, Nelson D. W.